698 So.2d 691 (1997)
Lori BILBO, as Tutrix for Minor, Jeremy BASNAW
v.
SHELTER INSURANCE COMPANY, Douglas Knippers, Linda Knippers and David Drago.
No. 96 CA 1476.
Court of Appeal of Louisiana, First Circuit.
July 30, 1997.
*692 Timothy J. Martinez, Steven P. Monaghan, Baton Rouge, for Plaintiffs-Appellants Lori Bilbo, et al.
Amos H. Davis, Smith & Davis, Baton Rouge, for Defendant-Appellee Shelter Mutual Ins. Co.
Kenner O. Miller, Jr., Sweeney & Miller, Baton Rouge, for Defendants-Appellees Douglas and Linda Knippers.
Linda Knippers, Baton Rouge, Defendant-Appellee in proper person.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
The plaintiffs in this tort action appeal the district court's granting of a defendant's motion for summary judgment. The court dismissed plaintiffs' claims against the defendants' homeowner's insurance company, concluding that there were no material facts in dispute and that, as a matter of law, because the policy excluded coverage for bodily injury to another that was intended or expected by an insured, the policy did not provide coverage for the damages suffered by the plaintiffs in this case.

FACTUAL AND PROCEDURAL BACKGROUND
About 5:30 p.m. on November 2, 1993, fourteen-year-old Jeremy Basnaw ("Jeremy") was standing in the front yard of his home talking to a friend, Tiffany Drago ("Tiffany"). As they talked, Vaughn Knippers ("Vaughn"), also fourteen years old, walked up to Jeremy and punched him in the nose. As a result of this single blow to his face, Jeremy suffered a broken nose.
Lori Bilbo ("Ms. Bilbo") is Jeremy's mother; she and Jeremy's father are divorced and she has sole custody of Jeremy. She filed suit to recover damages resulting from this incident, including medical expenses, Jeremy's physical and mental pain and suffering, permanent disfigurement, and loss of enjoyment of life. In an amended petition, she also claimed damages for her loss of consortium. Named defendants were Vaughn's parents, Douglas and Linda Knippers, and their homeowner's insurer, Shelter Mutual Insurance Company ("Shelter").[1] The petition claimed the injuries and damages were caused by Vaughn's striking Jeremy and were also directly attributable to Vaughn's parents' negligent supervision of him. All defendants filed a general denial, and Shelter later filed a motion for summary judgment, alleging its policy did not provide coverage for the damages claimed by the plaintiffs.
For purposes of its motion, Shelter admitted it was the homeowner's insurer of Vaughn's parents on the date of the attack, and that Vaughn was an insured under the policy. However, Shelter asserted that, because the bodily injury and damages suffered by Jeremy were intended by Vaughn, its policy did not cover those damages. The comprehensive personal liability protection afforded by the Shelter policy contained the following exclusion:
Under Personal Liability and Medical Payments to Others, we do not cover:
5. bodily injury or property damage expected or intended by an insured.
The evidence before the district court on the motion for summary judgment included the insurance policy and excerpts from depositions of Vaughn, Jeremy, and Tiffany. After reviewing this evidence and the oral and briefed arguments of counsel, the judge stated the following in his oral reasons for judgment:
I'm going to save everybody a lot of time by granting the motion for summary judgment, because if you tried this case on the meritsI'm trying to tell you something about the practice of law. If you try this case on the merits, you're going to get all your steam up in your locomotive engine, try this case, do a brilliant job. The jury is going to come in with a goose egg or with no coverage. I've seen it happen too many times.

*693 There's such a tenuous thread on the issue of the negligence of the parents, that it's not worth consideration at this point. The courts have been very broad in their permitting children, minors, to do anything they want to do without the parents being held accountable for it.
Based on this and similar observations about the likely outcome of a trial on the merits, the court granted the motion and dismissed all claims against Shelter.

APPLICABLE LAW

Motion for Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State Univ., 591 So.2d 342, 345 (La.1991); Jackson v. Slidell Nissan, 96-1017 (La.App. 1st Cir. 5/9/97), 693 So.2d 1257. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); McKey v. General Motors Corp., 96-0755 (La.App. 1st Cir. 2/14/97), 691 So.2d 164, 167. Summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law. Gautreau v. Washington, 95-1731 (La.App. 1st Cir. 4/4/96), 672 So.2d 262, writ denied, 96-1164 (La. 6/28/96), 675 So.2d 1123. The court should not seek to determine whether it is likely that the party moving for summary judgment will prevail on the merits, but rather, whether there is an issue of material fact. Jarrell v. Carter, 632 So.2d 321, 324 (La.App. 1st Cir.1993), writ denied, 94-0700 (La. 4/29/94), 637 So.2d 467.
When the altercation forming the basis of this litigation occurred, Louisiana law discouraged summary judgments. See Robertson v. Our Lady of the Lake Regional Medical Ctr., 574 So.2d 381, 385 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La. 1991). However, in 1996 the Louisiana legislature amended Code of Civil Procedure article 966 by adding paragraph (A)(2), which states, in pertinent part:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
Because the amended version is a procedural change, it is applied retroactively. Nail v. Germania Plantation, Inc., 96-1602 (La.App. 1st Cir. 5/9/97), 693 So.2d 1294, 1297.
The effect of the amendment is to level the playing field between the parties in two ways: first, the supporting evidence submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Jenson v. First Guaranty Bank, 96-0381 (La.App. 1st Cir. 5/9/97), 699 So.2d 403, 404. However, this change did not alter the burden of proof; the mover still has the burden of establishing that no material factual issue exists.[2] LSA-C.C.P. art. 966(C)(2); McKey, 691 So.2d at 167; Schroeder, 591 So.2d at 345. A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not recover. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable *694 to the case. Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918, 922.
A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or the amount of damages.[3] LSA-C.C.P. art. 966(E). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. A motion for summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith, or knowledge. Penalber, 550 So.2d at 583.

Interpretation of Insurance Contracts
An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. Ledbetter v. Concord General Corp., 95-0809 (La. 1/8/96), 665 So.2d 1166, 1169, rehearing denied, amended 95-0809 (La. 4/18/96), 671 So.2d 915. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045; Amend v. McCabe, 95-0316 (La. 12/1/95), 664 So.2d 1183, 1187. The intent of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. LSA-C.C. art. 2046; Dunn v. Potomac Ins. Co. of Illinois, 94-2202 (La.App. 1st Cir. 6/23/95), 657 So.2d 660, 663. However, if there is any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. See Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983); Ledbetter, 665 So.2d at 1169.

Intended Injury or Damage Exclusion
The exclusionary language used in the Shelter policy at issue in this case has often been determined to be ambiguous, and accordingly, has been construed in favor of coverage. Great American Ins. Co. v. Gaspard, 608 So.2d 981, 984 (La.1992); Baugh v. Redmond, 565 So.2d 953, 960 (La.App. 2nd Cir.1990); Breland v. Schilling, 550 So.2d 609, 610 (La.1989); Pique v. Saia, 450 So.2d 654, 655 (La.1984); cf. Cavalier v. Suberville, 592 So.2d 506, 507 (La.App. 5th Cir.1991), writ denied, 594 So.2d 1318 (1992). As a result of the jurisprudence regarding the ambiguity of this exclusion and the varying factual situations to which such language has been applied, the case law continues to develop and is not always consistent.
One of the first cases in which the Louisiana Supreme Court interpreted and applied a similar exclusion provision involved a police officer who was injured while attempting to arrest the insured. Pique, 450 So.2d 654. The insured was struggling with the police officer, pushed himself away from a fence, and fell with the officer onto a concrete driveway, seriously injuring the officer's elbow. The court construed the policy language to exclude coverage only for an intentional injury, defined as "the product of an intentional act." An intentional act is one where the actor consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Pique, 450 So.2d at 655. Finding the insured's act was not intentional, but merely negligent, the court held that the exclusion did not apply. Pique, 450 So.2d at 656. The court in its *695 analysis in this case focused on the intentional nature of the act.
Previously, this court, and others later, drew a distinction between the intentional nature of the act, as opposed to the intention to cause the specific injury which resulted. In Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir.1981), the insured had pushed the plaintiff, "in an effort to make her leave his house," but the trial court found he had no intent to injure or harm her and therefore, the policy exclusion did not apply. This court affirmed, stating, "[t]he exclusionary clause sought to be enforced herein does not preclude liability for an expected or intended `act', but rather for an expected or intended `injury'." Kling, 407 So.2d at 481. See also Schexnider v. McGuill, 526 So.2d 513 (La. App. 3rd Cir.1988).
The Louisiana Supreme Court re-examined this issue in Breland, 550 So.2d 609, a case factually similar to the one we are currently reviewing. In Breland, a disagreement between two players during a softball game resulted in the insured punching the plaintiff once in the jaw. The blow caused unusually severe fractures to both sides of the plaintiff's jaw and he was left with permanent scarring on both sides of his face. The court noted that the purpose of the intentional injury exclusion is to deny coverage to an insured who acts deliberately and intends or expects to cause bodily injury to another. Balanced against this, however, is the purpose of liability insurance, which is to give the insured protection from damage claims. Rather than follow its previous emphasis on the nature of the act as intentional or negligent, the court focused on the nature of the injury, stating:
This clause does not by its precise terms exclude coverage for bodily injury caused by the insured's intentional act. Rather, it excludes coverage for bodily injury "expected or intended from the standpoint of the Insured." The phrase "bodily injury ... which is expected or intended," emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act. The next phrase, "from the standpoint of the Insured," emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy.
Breland, 550 So.2d at 611. The court explained in detail the difference between this inquiry and the tort-based intent standard, which can expose an actor whose act is intentional to liability for injuries which he did not in fact specifically envision or desire to produce. It contrasted the insurance policy at issue, stating it "excludes coverage only for those injuries which the defendant subjectively desired to inflict." Breland, 550 So.2d at 612. Concluding, the court stated:
We hold, therefore, that when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact....
Breland, 550 So.2d at 614. Because the jury had concluded that the defendant did not intend to inflict serious injuries on the plaintiff, the court affirmed the lower courts' conclusion that the exclusion clause in the policy did not bar coverage. In a concurring opinion, Justice Lemmon noted,
The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation.
*696 Breland, 550 So.2d at 615. The majority's focus in this case was on the nature and extent of the injury, rather than the act, and on the subjective intent of the insured with respect to the injury actually inflicted.
Reversing a trial court's judgment in a similar case, the Louisiana Second Circuit Court of Appeal in Baugh, 565 So.2d 953, held that because the insured softball fan did not intend to seriously injure the umpire when he struck him in the face after the game, the policy exclusion was inapplicable. The court observed that the actions of the insured were not premeditated and not intended to inflict the serious injury sustained by the plaintiff, therefore the policy covered the damages.
However, the Louisiana Fifth Circuit Court of Appeal reached the opposite conclusion, affirming a trial court's granting of summary judgment in Cavalier, 592 So.2d 506. In that case, the insured minor grabbed a classmate from behind, turned him around, and punched him in the face, breaking several facial bones. Despite the minor's testimony that he did not intend to inflict severe injury and was very sorry for his actions, the court noted,
Anyone would reasonably expect injury to result from Tim's acts; he tracked Lenny down, grabbed him and spun him around, and punched him in the face. Under the terms of the policy, which are clear and unambiguous, there is no factual issue to be resolved.
Cavalier, 592 So.2d at 507. The court applied the policy language to exclude coverage.
In two more recent cases, the Louisiana Supreme Court has also excluded coverage, applying similar policy language. In one case, Great American, 608 So.2d 981, an insured used gasoline to set fire to his leased retail clothing store and its contents; the fire spread to several other stores in the strip shopping center, causing extensive damage. The policy there defined an "occurrence" to which coverage extended as "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Great American, 608 So.2d at 982. The trial court had found the insured clearly did not intend to destroy anything more than his own shop, since the destruction of other property in the center would be of no conceivable benefit to him. Therefore the damage to the other stores was neither expected nor intended and was covered by the policy. In examining the expectation or intention of the insured, the supreme court stated,
[t]he test is whether at the time [the insured] set the fire he intended to damage the building and property of the other tenants or had a subjective belief that such a result was certain or substantially certain to follow. (emphasis added).
Great American, 608 So.2d at 986. The court referred to Justice Lemmon's concurring opinion in Breland, noting that the insured's subjective intent should be extracted from all the facts and circumstances. Noting the quantity of accelerant used, the court concluded the extensive damages which resulted from the fire would be expected to result, and therefore the insured "knew that such damage was substantially certain to follow his intentional act of setting the fire." Great American, 608 So.2d at 986. The court also noted that no reasonable policy holder would believe that his insurance policy would provide coverage for a criminal act of arson, and denied coverage. The court's analysis utilized the more objective test suggested in Justice Lemmon's concurring opinion in Breland, looking beyond the words of the insured to the totality of the factual situation to determine what the insured must have intended.
The other case in which the Louisiana Supreme Court applied similar policy language to conclude there was no coverage for the insured's acts was Yount v. Maisano, 627 So.2d 148 (La.1993). There, two groups of young men confronted each other several times after over-celebrating the Fourth of July on a beach in Florida. There were several physical altercations between various members of the two groups, culminating in the insured jumping one of the other young men from behind, knocking him to the ground, and punching him and kicking him until another person intervened and pulled him off. The insured's actions caused serious *697 injuries to the victim, including multiple fractures of the jaw, broken and lost teeth, lacerations of the ears, contusions, abrasions and bruises. A jury determined the exclusion clause did not bar coverage because the severity of the injuries was not intended by the insured, and the appellate court affirmed that verdict. Citing extensively from its earlier decision in Breland, the supreme court reversed and found there was no coverage. The court emphasized that, "[w]hile the testimony of the insured as to his intent is one factor to be considered, it is not the only factor." Yount, 627 So.2d at 152. The court reviewed the facts and concluded:
The injuries that [the victim] suffered were not unusual or "freak" as were the injuries in Breland.... We hold that where an insured sets out to commit a battery on another individual and repeatedly strikes him in the face with both fists and kicks him repeatedly in the face, the resulting broken facial bones and other facial injuries are either intended by the insured or the insured must know that such injuries are substantially certain to result. Therefore, the policy exclusion bars recovery against [the insurer].
Yount, 627 So.2d at 152-53.

APPLICATION OF LAW TO THE FACTS
We observe first that the district court erred in granting the motion for summary judgment on the basis that the plaintiff was unlikely to prevail in a trial on the merits. While the court's prognostication might very well be accurate, it is not grounds for summary judgment. Accordingly, we must determine whether, despite this error of law, summary judgment was properly granted because there were no material facts at issue and, as a matter of law, the plaintiffs' claims against Shelter must be dismissed because the insured expected or intended the bodily injury suffered by Jeremy.
As the developing line of jurisprudence interpreting similar policy exclusion language demonstrates, the inquiry is fact-intensive. This is evident in Pique, where the court focused on the intentional nature of the specific action, through Breland, where the court shifted to an examination of the subjective intent of the actor, to Great American and Yount, where that intent is determined by a more objective review of the totality of the facts and circumstances of the incident. The ultimate issue in each instance is: did the insured intend to inflict the extent of injury or damage which resulted from his action? If so, his policy does not provide coverage. If he did not intend the extent of those injuries or damages, his policy will provide coverage.
The Breland case makes this almost entirely a subjective factor, with Great American and Yount emphasizing that, despite the subjective nature of the inquiry, a person's intent can, to some extent, be determined from the objective facts and what common sense dictates that person must have known would happen as a result of his acts. Our task, therefore, is to examine the deposition testimony in the record to determine whether we can so clearly discern Vaughn's intent when he punched Jeremy, that reasonable minds could not differ concerning this fact. If there could be a difference of opinion, then this material fact is still at issue, and summary judgment is not appropriate.
Tiffany testified that she, her friend Melissa, and several other young people were together in a car, after leaving a fast-food restaurant where they had picked up Vaughn and another boy. They went to the neighborhood where Melissa lived to drop her off at her home. Tiffany and Melissa got out of the car, and the driver of the car, with Vaughn and the other male passenger, briefly left the scene. Tiffany knew that another friend of hers, Jeremy, lived directly across the street and she went to his house to talk to him. In response to her knock at the door, Jeremy came out into the front yard of his home and was standing there, talking to Tiffany. At this point, the car with the three teenage boys came back and parked across the street from where Tiffany and Jeremy were standing. Tiffany indicated that Vaughn and another boy got out of the car and approached Jeremy, who looked nervous and began backing away. Although Jeremy did not do or say anything to provoke him, Vaughn simply walked up to Jeremy and *698 punched him in the nose. When Jeremy's parents came out of the house to help him, Tiffany and the other teenagers got back into the car and left.
Jeremy testified that he and Vaughn knew each other; they had attended the same middle school, but they were not friends and did not attend the same high school. Jeremy recounted two incidents, one in middle school and one recent event just two months earlier, when Vaughn had approached him and threatened to hit him. Although Jeremy could not recall whether he had ever said anything negative about Vaughn, he conjectured that other mutual acquaintances might have told Vaughn that Jeremy was saying bad things about him behind his back. Jeremy said that when Vaughn came across the street toward him, he said to Jeremy, "I heard you was talking stuff about me," and then hit Jeremy in the nose with his right hand. Jeremy insisted he did nothing to invite or provoke this attack, and he did not attempt to strike back. Jeremy's nose began bleeding immediately and he turned and went toward his house for help. Jeremy went to a hospital emergency room, where x-rays revealed his nose was broken. Jeremy said the injury was very painful for at least four months, and his nose is now permanently crooked. He indicated he intends to get surgery to straighten it out in the future.
Vaughn's recollection of the incident is somewhat different from Tiffany's and Jeremy's version. He stated that when he and the other boys drove back to Melissa's house and parked there, he saw Jeremy and Tiffany across the street. When he looked across the street at them, Jeremy lifted his arms into the air in a "touchdown" gesture. Vaughn said this meant Jeremy wanted to fight him. So he and the other passenger got out of the car, still carrying their food in their hands, to confront Jeremy and see what he wanted. Vaughn and the other boy were both football players; both were bigger and taller than Jeremy, who did not play football. Vaughn said he had been in at least ten fights before this incident, and had learned to box, "just like playing around," at a boxing gym in Baton Rouge. Vaughn stated when the two boys got to Jeremy, Jeremy "just like stuck his hand out and I just hit him. I wasn't giving him time to hit me or shake my hand or anything. I didn't know what he was going to do." Vaughn said he did not intend to break Jeremy's nose or cause any serious injury to him.
Our examination of these facts simply illustrates the problem involved in deciding an issue such as this on a motion for summary judgment. Shelter argues that given the size, weight, and experience advantage which Vaughn had over Jeremy, Vaughn must have known that a blow to Jeremy's face would break his nose. However, these same facts can be looked at another way. Because he played football, Vaughn may have experienced enough violence in the game so that he would discount the effect of a single blow. Additionally, we do not know from the deposition excerpts in the record whether any of Vaughn's other fights or boxing matches resulted in injuries to others. If Vaughn participated in more than ten such fights without inflicting injuries on others, he might be justified in not expecting the damage suffered by Jeremy.
The facts of this case are very similar to those in Breland, Baugh, and Cavalier. In all three cases, the insured punched the victim in the face. As a result, the victim in Breland had his jaw broken on both sides. The Baugh plaintiff suffered extensive damage to his teeth. The victim in Cavalier had broken facial bones. In the first two cases, the courts determined these injuries were more severe than would be expected from the degree of force used by the insured. The Cavalier court held the precise opposite.
Of the three cases, only Breland has direct precedential impact on this court. However, as we attempt to apply the Breland analysis, we find very little in this record to guide our decision. Breland held that if minor injury was intended, and minor injury resulted, there is no coverage; and if major injury was intended, and major injury resulted, there is no coverage. But if minor injury was intended, and major injury resulted, there is coverage. From whose viewpoint do we determine whether Jeremy's injuries were major? Certainly he believes they were, but there is no medical evidence in the record beyond *699 Jeremy's testimony that his nose was broken, took about four months to heal, and is now crooked. Without medical reports of any kind, we cannot determine whether Jeremy's injury should be considered "serious." Nor can we be certain that the injury was so much more severe than one would expect from a single blow to the face that Vaughn could not have "expected or intended" this result when he punched Jeremy in the face. Certainly, applying the language used by the court in Yount, this injury does not seem unusual or "freak."
After a thorough review, the only thing clear about this issue is that reasonable minds could differ about whether Vaughn intended the degree of injury which he inflicted on Jeremy. This is a factual dispute. Therefore summary judgment on this issue is not appropriate.[4]

CONCLUSION
We conclude that the district court erred in granting the motion for summary judgment, dismissing plaintiffs' claims against Shelter. Accordingly, this case must be reversed and remanded. All costs of this appeal are to be paid by Shelter.
REVERSED AND REMANDED.
LeBLANC, J., concurs.
NOTES
[1] Tiffany's father, David Drago, was also named as a defendant, but all claims against him were dismissed by the plaintiffs.
[2] While this appeal was pending, the legislature amended and reenacted LSA-C.C.P. art. 966(C), and repealed LSA-C.C.P. art. 966(G), effective July 1, 1997. 1997 La. Acts No. 483. Formerly, paragraph (G) stated the burden of proof shall remain with the mover; that statement now introduces paragraph (C)(2). Like the 1996 amendment, this revision recognizes that there are circumstances when the issue before the court on the motion for summary judgment is not one on which the mover would have the burden of proof at trial, and it clarifies the mover's and the respondent's burdens of proof in that situation. However, the issue before this court is clearly one on which the mover alone would bear the burden of proof at trial.
[3] Act 483 of the 1997 legislative session also repealed paragraph (F) of LSA-C.C.P. art. 966, which had specifically listed the insurance coverage issue as one which was appropriate for a partial summary judgment. That legal principle was incorporated in the more general provisions of amended and reenacted paragraph (E), which now states summary judgment may be rendered disposing of a particular issue or defense in favor of one or more parties, although its granting does not dispose of the entire case.
[4] Since we conclude summary judgment should not have been granted, we do not reach the negligent supervision claim against Vaughn's parents.