753 So.2d 349 (2000)
GAYLORD CHEMICAL CORPORATION
v.
PROPUMP, INC., Ingersoll-Rand Company, Dresser Industries, Inc., and Ingersoll-Dresser Pumps.
No. 98 CA 2367.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*351 Craig J. Robichaux, Paul J. Mayronne, Talley, Anthony, Hughes & Knight, L.L.C., Mandeville, for Plaintiff/Appellant Gaylord Chemical Corporation.
Paul L. Peyronnin, Owen B. St. Amant, Phelps Dunbar, L.L.P., New Orleans, for Defendants/Cross-Plaintiffs/Appellants Ingersoll-Rand Company, Dresser Industries, Inc., and Ingersoll-Dresser Pumps.
Paul H.F. Baker, Lafayette, for Defendant/Cross-Defendant/Appellee Commercial Union Ins. Co.
Before: LeBLANC, PARRO, and KUHN, JJ.
PARRO, J.
This is an appeal from the trial court's granting of a motion for summary judgment in favor of Commercial Union Insurance Company, finding it did not provide coverage under its commercial general liability policy for the claims made against its insured, ProPump, Inc. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
The facts underlying this claim, as alleged in the petition and amending petition, are as follows. On January 30, 1992, Gaylord Chemical Corporation (Gaylord) took delivery of an Ingersoll-Rand pump purchased from ProPump, Inc. (ProPump). The pump was manufactured by Ingersoll-Rand Company, which allegedly was associated with Dresser Industries, Inc. in a joint venture partnership, Ingersoll-Dresser Pumps, for the manufacture of such pumps. At the time of the sale, ProPump had a comprehensive general liability policy issued by Commercial Union Insurance Company (Commercial Union). The pump allegedly did not perform to Gaylord's expectations, and on January 28, 1993, Gaylord filed this lawsuit. The suit named ProPump as a defendant, as well as Ingersoll-Rand Company, Dresser Industries, Inc., and Ingersoll-Dresser Pumps (collectively, Ingersoll). A supplemental and amending petition named Commercial Union as an additional defendant.[1]
Gaylord's suit claimed ProPump and Ingersoll represented to Gaylord that the pump would perform according to certain stated specifications and design capacities; however, it failed to perform according to those specifications and achieved only 66% of the represented design capacity under acceptable operating conditions. Gaylord alleged the declaration of the defendants concerning the design capacity and performance of the pump was the principal motive for Gaylord's purchase, and the pump's failure to perform to specifications rendered its use so inconvenient and imperfect that Gaylord would not have purchased it, had it known of this vice. Gaylord sought rescission of the sale, refund of the entire purchase price, lost profits and *352 additional expenses incurred due to the failure of the pump to perform as represented,[2] attorney fees, and costs.
Ingersoll filed a cross-claim against Commercial Union, alleging ProPump had a duty to inform Ingersoll of the exact uses to which Gaylord intended to put the pump, and ProPump's failure to communicate such information to Ingersoll was a breach of that duty. Ingersoll claimed that, should it be determined that Gaylord had a valid claim against Ingersoll, Commercial Union would be obligated to indemnify Ingersoll under the terms of the policy issued to ProPump. Commercial Union moved for summary judgment, admitting it provided a comprehensive general liability insurance policy to ProPump for the time period in question, but claiming its policy did not provide coverage to ProPump for Gaylord's redhibition claims and Gaylord's and Ingersoll's claims of negligent misrepresentation or breach of contract. After a hearing on the motion, the trial court granted the motion and dismissed all claims against Commercial Union. The court certified the judgment as final[3] and this appeal followed.

APPLICABLE LAW
Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or the amount of damages.[4]See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The burden of proof on a motion for summary judgment is on the movant. LSA-C.C.P. art. 966(C)(2). An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. Jackson v. Frisard, 96-0547 (La.App. 1st Cir.12/20/96), 685 So.2d 622, 629, writs denied, 97-0193 and 97-0201 (La.3/14/97), 689 So.2d 1386 and 1387.
An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, rehearing denied, amended on other grounds, 95-0809 (La.4/18/96), 671 So.2d 915. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. LSA-C.C. art.2046; Dunn v. Potomac Ins. Co. of Illinois, 94-2202 (La.App. 1st Cir.6/23/95), 657 So.2d 660, 663. The court should not strain to find ambiguity where none exists. Strickland v. State Farm Ins. Cos., 607 So.2d 769, 772 (La.App. 1st Cir.1992). However, if there is any doubt or ambiguity as to the *353 meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. See LSA-C.C. art. 2056. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La.1983); Ledbetter, 665 So.2d at 1169. Whether a contract is ambiguous is a question of law. Strickland, 607 So.2d at 772.

POLICY INTERPRETATION ISSUES
Gaylord concedes that its purely redhibition claims are not covered by the policy.[5] In fact, at oral argument, Gaylord acknowledged that it no longer seeks rescission of the sale, because it augmented the Ingersoll pump with another pump and currently needs both pumps in its operation. Therefore, Gaylord's claims are limited to the other losses it incurred. Because ProPump represented that the pump would conform to Gaylord's specifications and would meet its performance needs, Gaylord characterizes its claims as negligent misrepresentation, breach of contract, and breach of warranty. In its crossclaim, Ingersoll alleges ProPump failed to provide complete and accurate information to Ingersoll concerning the intended use of the pump, thereby stating a negligent misrepresentation claim. Obviously, because Ingersoll did not purchase anything from ProPump, its claims against ProPump are not based on redhibition or failure to provide a workman-like product. Ingersoll claims Commercial Union should indemnify it for any damages it may have to pay Gaylord as a result of the incorrect information provided to it by ProPump, because as a result of that misinformation, it sold a pump that purportedly did not meet Gaylord's specifications and caused damage to Gaylord.
The Commercial Union policy states it provides ProPump with coverage for property damage liability if caused by an "occurrence" during the policy period. According to the policy, "property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.
There is no real dispute that Gaylord suffered various types of property damage as a result of the less-than-adequate performance of the pump. The parties also do not dispute that the incident giving rise to the claims, as well as Gaylord's losses, occurred during the policy period.
However, the claims against Commercial Union as ProPump's insurer must allege property damage arising out of an "occurrence" for coverage to attach. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The parties dispute whether Gaylord's property damage was caused by an "occurrence."
Commercial Union argues that the pure failure to meet a contractual obligation to provide a workman-like product to a customer is not an "occurrence," citing Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082 (La.App. 3rd Cir.1983). However, the court in that case did not deal with the issue of what constitutes an "occurrence," *354 but found that damage to the product itself was the only claim and such damage was unambiguously excluded under the policy at issue. Similarly, if the only losses claimed in this case were for damage to the pump or for the repair or replacement of that defective unit, coverage would be excluded under the "work" or "product" exclusions.[6] However, Gaylord has claimed other losses, such as those for damage to its physical plant and loss of use of some of its other equipment.
Further, despite Commercial Union's argument that failure to provide a workmanlike product is not an "occurrence," we note that the claims in this case involve something other than and in addition to a failure to provide a workman-like product. The product in this case was not defective; it worked in accordance with its design and capacity, even though that design and capacity did not meet Gaylord's requirements. The claimed damages in this case are allegedly the result of ProPump's negligence in communicating information concerning its customer's needs and its product's ability to meet those needs. At least one Louisiana court has held that claims of negligent misrepresentation may constitute an "occurrence" for the purpose of triggering the duty to defend. Colomb v. United States Fidelity & Guar. Co., 539 So.2d 940 (La.App. 4th Cir.1989).
A leading authority on insurance contracts suggests that when, as in this policy, the word "occurrence" is defined as an "accident," whether there has been an occurrence depends upon whether there has been an accident, not upon the legal cause or consequence of that accident. See William Shelby McKenzie and H. Alston Johnson III, Louisiana Civil Law Treatise: Insurance Law and Practice 370 (1996). Accident is defined from the viewpoint of the victim; losses that were unforeseen and unexpected by the victim are the result of an accident. Id. at 373; see also Nelson v. Want Ads of Shreveport, Inc., 31,168 (La.App. 2nd Cir.10/30/98), 720 So.2d 1280, 1282-83; Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, 1223-24, writs denied, 95-1522 and 95-1536 (La.9/29/95), 660 So.2d 878. We conclude that the occurrence of an unforeseen and unexpected loss, whether the result of a defective product or an insured's negligent communication of misleading, incomplete, or incorrect information during the policy period, constitutes an "accident," and thus, an "occurrence," as that term is defined in the policy at issue in this case.[7]
Our inquiry does not end at this point. We must examine the policy to determine whether other provisions limit or exclude coverage for the type of claims alleged by Gaylord and Ingersoll. As previously noted, losses based on damage to the pump itself are excluded from coverage by either the "work" or "product" exclusions. However, Gaylord contends the policy covers its claims for damages to its other property under the "products-completed operations hazard" coverage, which is defined as follows:
"Products-completed operations hazard" includes all ... "property damage" occurring away from premises you [ProPump] own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or

*355 (2) Work that has not yet been completed or abandoned.
This type of coverage is described by the above-referenced authority on insurance contracts as follows:
Any insured who manufactured, sold, handled or distributed goods or products was exposed to the products hazard, which is risk of liability arising out of products after they have left the hands of the insured. The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises.
McKenzie & Johnson, supra, at 379. In its brief to this court, Commercial Union acknowledges that the purpose of this provision is to afford coverage for "property damage" to property other than to the insured's work or product itself.
The damages claimed in this case occurred on Gaylord's premises, not ProPump's, and allegedly arose out of ProPump's completed work or product, including both the inadequate pump and the inaccurate representations made to Gaylord and Ingersoll. Some of these claims are for damages to property other than the insured's work or product itself. Therefore, the claims in this case meet the definition for property damage covered under the products-completed operations hazard.
However, the cited authority adds a caveat, stating that "[i]n policies providing coverage for the products and completed operations hazards, there are exclusions which temper this coverage." McKenzie & Johnson, supra, at 380. Commercial Union claims the "work" and "product" exclusions, as well as the "impaired property" exclusion, preclude coverage for the type of claims asserted in this case.[8]
We note first that the "impaired property" exclusion only excludes damage to property that has not been physically injured or for which the claimed damages are only for loss of use of that property. Therefore, any damages based on actual physical injury to Gaylord's plant, equipment, or other property would not be excluded under this provision.
With reference to the "work" and "product" exclusions, as previously noted, the damages claimed in this case go beyond damage to the pump itself. Commercial Union cites several Louisiana cases for the proposition that not only the damage to the work or product of the insured is excluded by similar policies, but also any consequential damages directly resulting from the allegedly defective workmanship. See Swarts, 610 So.2d at 890-91; Old River Terminal Co-op v. Davco Corp. of Tennessee, 431 So.2d 1068, 1071 (La.App. 1st Cir.1983); Breaux v. St. Paul Fire Marine Ins. Co., 345 So.2d 204, 207-08 (La.App. 3rd Cir.1977). However, each of these cases involved purely redhibition claims, in which the only consequential damages were those directly resulting from defects in the insured's "work" or "product" itself, such as damages for inconvenience, engineering fees, and repair *356 costs. In each of these cases, the courts also recognized that damages to other property would not be excluded by the "work" and "product" exclusions. See Swarts, 610 So.2d at 891 n. 2; Old River, 431 So.2d at 1071; Breaux, 345 So.2d at 205. The cases cited by Commercial Union do not support its arguments that the policy exclusions unambiguously eliminate all coverage in this case.
We are further influenced by Gaylord's argument that if the policy exclusions are enforced in the manner suggested by Commercial Union, the products-completed operations hazard protection would be virtually worthless for ProPump's business, despite its payment of a premium of almost $5000 per year for this coverage. A similar situation was addressed by the Fourth Circuit, which observed:
[I]f we were to adopt [the insurer's] argument we would, in effect, be negating the "Completed Operations" coverage which [the insured] apparently sought and paid for. It would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage.
Orleans Parish School Bd. v. Scheyd, Inc., 95-2653 (La.App. 4th Cir.4/24/96), 673 So.2d 274, 279. The court there determined it could not say the policy provisions unambiguously precluded coverage; therefore summary judgment was inappropriate.
In Mike Hooks, Inc. v. JACO Services, Inc., 95-1485 (La.App. 3rd Cir.5/8/96), 674 So.2d 1125, writ denied, 96-1924 (La.11/1/96), 681 So.2d 1264, a contractor's insurer moved for summary judgment on the grounds that its policy's work product exclusion precluded coverage for the claims brought against its insured. The work product of the insured consisted of installing ten main bearings in the engine of a dredge, and the plaintiff alleged the insured had not performed the work properly, causing monetary losses and other damages. The court noted that the only explanation concerning what was covered under the products-completed operations hazard provision was in the definitions section of the policy, and stated, "We are unable to find an unambiguous provision in this policy addressing what the products-completed operations coverage, as found on the declarations page, encompasses." Mike Hooks, 674 So.2d at 1127-28. Concluding the insurer had failed to meet its burden of proving an unambiguous coverage exclusion, the court reversed the lower court's summary judgment.[9]
In reaching its conclusion that summary judgment was not appropriate in the Mike Hooks case, the Third Circuit relied on this court's observations concerning identical policy provisions in Kidd v. Logan M. Killen, Inc., 93-1322 (La.App. 1st Cir.5/20/94), 640 So.2d 616, superseded by statute on other grounds.[10] This court noted in the Kidd case:
While the language in the policy contains numerous provisions regarding the coverage, exclusions, and exceptions to the exclusions and may suggest that the damages sustained by the [plaintiffs] fall under the "products-completed operations" coverage of the policy, there are no provisions in the policy regarding this coverage, other than that contained in the definitions section of the policy.
*357 Kidd, 640 So.2d at 622. This court concluded summary judgment was not appropriate, and remanded the case to the trial court for further proceedings. The Commercial Union policy issued to ProPump in this case is similar in that respect to the policies in the Mike Hooks and Kidd cases.
In the case we are currently reviewing, we note that the trial court observed in oral reasons for judgment:
It's been my experience that this particular type of policy is not designed to cover this particular type of claim. I would grant the motion for summary judgment by [Commercial Union]. That will give us time to get it up to the Court of Appeal and have the case sorted out and give us some clear guidance.
It is obvious from this comment that the trial court felt "some clear guidance" was necessary concerning the policy provisions. If those provisions were not ambiguous, no guidance from this court would be needed.
Our review of this policy, the applicable jurisprudence, the comments of the trial court, and the opinions of noted authorities convinces us that Commercial Union's policy exclusions are ambiguous when construed with the products-completed operations hazard coverage and applied to the type of claims asserted in this case. Additionally, we conclude that some of the damages claimed by Gaylord, particularly losses due to physical injury to its other equipment and property, are not unambiguously excluded by the Commercial Union policy. Accordingly, we find that Commercial Union did not meet its burden of proof on its motion for summary judgment, alleging its policy did not cover any of the losses claimed by Gaylord. Also, because there may be coverage under the policy for some of the damages allegedly caused by ProPump's negligent communication of information to Ingersoll concerning Gaylord's needs, summary judgment on Ingersoll's claims was also inappropriate.

CONCLUSION
Based on the foregoing, we reverse the judgment of the trial court in favor of Commercial Union, and remand this matter for further proceedings. All costs of this appeal are assessed to Commercial Union.
REVERSED AND REMANDED.
NOTES
[1] Although the record is not clear concerning the status of ProPump, briefs to the trial court and this court represent that it ceased doing business some time during 1993.
[2] The precise nature of these additional expenses is not alleged. However, in oral argument, Gaylord mentioned loss of use of the pump and related equipment, damage to piping and other plant components due to the pump's excessive vibration, lost sales of its product during repair efforts, and the costs of those repair efforts.
[3] See LSA-C.C.P. art. 1915.
[4] Before 1997, Louisiana Code of Civil Procedure article 966(F) specifically listed the insurance coverage issue as one which was appropriate for a partial summary judgment. Act 483 of the 1997 legislative session repealed paragraph (F) and incorporated its principle in the more general provisions of amended and reenacted paragraph (E), which now states summary judgment may be rendered disposing of a particular issue or defense in favor of one or more parties, although its granting does not dispose of the entire case. See 1997 La. Acts, No. 483, § 1, eff. July 1, 1997.
[5] There is consistent jurisprudence interpreting similar commercial general liability policies, holding that these unambiguously exclude coverage for damage to the work or product itself or for repair or replacement of the insured's defective work or product. This is based on the principle that general liability policies are not intended to serve as performance bonds. See Swarts v. Woodlawn, Inc., 610 So.2d 888, 890-91 (La.App. 1st Cir.1992), and cases cited therein.
[6] The policy excludes coverage for:

k. "Property damage" to "your product" arising out of it or any part of it.
l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
[7] Although we have found an "occurrence" in this case, we note that this court, in Superior Steel, Inc. v. Bituminous Cas. Corp., 415 So.2d 354 (La.App. 1st Cir.1982), indicated that regardless of the insurance company's "occurrence" argument, coverage existed under the "completed operations hazard" and "products hazard" provisions of the policy in question, and the only remaining issues were whether any policy exclusions absolved the insurance company of liability in the case.
[8] The "impaired property" exclusion excludes coverage for:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
* * * * * *
"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.
[9] Criticizing this decision, the above-cited commentator suggests the court "failed to recognize that the insurer covered risks unrelated to repair or replacement of the insured's work, such as claims for injury to persons and other property that commonly are asserted to arise out of defective work or products." McKenzie & Johnson, supra, at 51 (1999 Pocket Part)(emphasis added).
[10] Certain statements concerning summary judgments in the Kidd decision were superseded by the amendments to Article 966 of the Louisiana Code of Civil Procedure, which stated summary judgment is now favored. However, the substantive principles concerning the interpretation of insurance policies have not been superseded.