897 So.2d 677 (2004)
McMATH CONSTRUCTION COMPANY, INC.
v.
Glen DUPUY d/b/a Specialty Services and Colony Insurance Company.
No. 2003 CA 1413.
Court of Appeal of Louisiana, First Circuit.
November 17, 2004.
Writ Denied February 18, 2005.
*679 John S. Lawrence, Jr., Mandeville, for Plaintiff-Appellant McMath Construction Co., Inc.
Kevin L. Cole, Cynthia J. Thomas, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, L.L.P., Mandeville, for Defendant-Appellee Colony Insurance Co.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
McMath Construction Company, Inc. (McMath) appeals the granting of summary judgment in favor of Colony Insurance Company (Colony), finding there was no coverage under its commercial general liability policy for the claims McMath brought against Colony's insured, Glen Dupuy, d/b/a Specialty Services (Dupuy). We amend and affirm as amended.

FACTUAL AND PROCEDURAL BACKGROUND
McMath was the general contractor on a condominium complex in Mandeville, Louisiana, and hired Dupuy to install the stucco exterior insulation and finish system. Dupuy was insured by Colony. After Dupuy's work was completed and he had been paid, the building leaked around the doors and windows, allegedly because Dupuy's workers had failed to apply backer rod to 90% of the openings around the windows and doors before caulking and finishing them with stucco.[1] McMath called on Dupuy to correct the problem; after he tried and failed to fix the leaks, McMath hired another company to make the repairs. In addition to repair costs, McMath incurred delay damages due to the year-long attempts to solve the problem. Fortunately, when McMath realized the building was not waterproof, he held off on finishing the interiors, so there was no damage to the condominium units as a result of the leaks. McMath sued Dupuy and Colony; Colony filed a motion for summary judgment, claiming its policy did not cover the problems alleged by McMath. The evidence submitted in connection with the motion and opposition consisted of the petition, a copy of the policy, and the depositions of Glen Dupuy and Don McMath, the president and owner of McMath.
Colony claimed under the facts of this case, there was no "occurrence." The policy defines "occurrence" as an "accident, including continuous or repeated exposure *680 to substantially the same general harmful conditions." Colony further claimed that even if there had been an "occurrence," certain exclusions in the policy were applicable. In Exclusion J(5), coverage is excluded for property damage to real property on which the insured is working, if the damage arises out of those operations; Exclusion J(6) excludes damage to property that must be restored, repaired, or replaced because of improper workmanship. However, the policy further states that Exclusion J(6) does not apply to property damage included in the "products-completed operations hazard."[2] Products-completed operations hazard coverage is for property damage "arising out of `your work' ... when all of the work called for in your contract has been completed," even if the work may need some "correction, repair, or replacement." "Your work" means "work or operations performed by you or on your behalf" and "materials ... furnished in connection with such work or operations." Other provisions exclude property damage to "your product" (Exclusion K) and to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" unless the damaged work or the work out of which the damage arises was performed by a subcontractor (Exclusion L). Exclusion N excludes damages claimed for any loss, cost, or expense for repair or replacement of "your product," "your work," or "impaired property," if such product, work, or property is "withdrawn or recalled" from use "because of a known or suspected defect, deficiency, [or] inadequacy" in it.
After considering the evidence, the trial court granted the motion and dismissed McMath's claims against Colony. McMath appealed, claiming the trial court erred: in failing to recognize that Dupuy's purchase of products-completed operations hazard coverage obviated the need to find there was an "occurrence"; in determining there was no "occurrence"; in failing to resolve ambiguities in the policy in favor of coverage; in finding Exclusion J(5) applied, although the property damage occurred after completion of Dupuy's performance; in determining Exclusion J(6) applied, although Dupuy had purchased "products-completed operations hazard" coverage and the exclusion stated it was inapplicable under this circumstance; in determining that Exclusion K applied to exclude damage to "your product," despite the policy specification that "your product" does not include real property; in failing to recognize there were genuine issues of material fact in dispute as to the application of Exclusion L; in finding Exclusion L applied, when the work performed by Dupuy had been subcontracted to other people; and in finding Exclusion N applied, when no products, work, or impaired property were recalled or withdrawn.[3]

APPLICABLE LAW

Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary *681 judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment must prove some exclusion applies to preclude coverage. Gaylord Chem. Corp. v. ProPump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352.

Insurance Policy Interpretation
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. LSA-C.C. art.2046; Dunn v. Potomac Ins. Co. of Illinois, 94-2202 (La.App. 1st Cir.6/23/95), 657 So.2d 660, 663. The court should not strain to find ambiguity where none exists. Strickland v. State Farm Ins. Cos., 607 So.2d 769, 772 (La.App. 1st Cir.1992). However, if there is any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. See LSA-C.C. art.2056. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La.1983). Whether a contract is ambiguous is a question of law. Strickland, 607 So.2d at 772.

DISCUSSION
Our review of this judgment is "de novo." Therefore, we begin our analysis with a comparison of the policy provisions to the uncontested facts, as revealed in the evidence. It is uncontested that McMath's claims against Dupuy arose out of serious water leaks around windows and doors that occurred with every heavy rain. Regardless of the cause of the leaks, this was "continuous or repeated exposure to substantially the same general harmful conditions." "If the roof leaks ..., the resulting property damage triggers coverage under an `occurrence' basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor." William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 183, p. 370, in 15 Louisiana Civil Law Treatise (2nd Ed.1996). Therefore, there was an "occurrence," as defined in the policy.[4]
*682 Dupuy also purchased products-completed operations hazard coverage, which refers to the insured's exposure to liability for property damage arising out of completed work performed away from his premises. The evidence reveals the condominium project was not performed on Dupuy's premises, and his work there was complete, except for whatever repairs might be necessary. The policy defines Dupuy's work to include materials furnished in connection with it. As defined in the policy, products-completed operations hazard coverage included property damage arising out of his work, when all of the work called for in his contract had been completed, even if the work needed some correction, repair, or replacement. Therefore, McMath's claims fell within the products-completed operations hazard coverage. However, our inquiry does not end there.
"In policies providing coverage for the products and completed operations hazards, there are exclusions which temper this coverage." McKenzie & Johnson, supra § 186 at 380. Therefore, we must examine the policy exclusions to determine whether one of them is applicable. Exclusion J(5) precludes coverage for property damage to "that particular part of real property on which you or any ... subcontractors working directly or indirectly on your behalf are performing operations," if the damage arises out of those operations. This exclusion is not applicable, because Dupuy's work was not being performed when the damage occurred, but was complete. Exclusion J(6) excludes damage to property that must be restored, repaired, or replaced because of improper workmanship. However, an exception states that Exclusion J(6) does not apply to property damage included in the products-completed operations hazard coverage. As previously noted, products-completed operations hazard covers property damage arising out of Dupuy's work after its completion, even if the work needed repair or replacement. Therefore, because the property damage in this case was included in the products-completed operations hazard coverage, Exclusion J(6) does not apply.
The more problematic provisions are the "work" and "product" exclusions. Exclusion K eliminates coverage for property damage to "your product." Exclusion L eliminates coverage for property damage to "your work" arising out of it or any part of it and included in the products-completed operations hazard. These exclusions reflect the intent of the insurance industry to avoid the possibility that coverage under a commercial general liability policy will be used to repair and replace the insured's defective products and faulty workmanship. McKenzie & Johnson, supra § 198 at 412. Consistent jurisprudence interpreting commercial general liability policies holds that these exceptions unambiguously exclude coverage for damage to the work or product itself or for repair or replacement of the insured's defective work or product. This is based on the principle that general liability policies are not intended to serve as performance bonds. Swarts v. Woodlawn, Inc., 610 So.2d 888, 890-91 (La.App. 1st Cir.1992); Gaylord, 753 So.2d at 353 n. 5. The jurisprudence has further interpreted these provisions to exclude consequential damages directly resulting from defective workmanship, such as damages for repair *683 costs. See Gaylord, 753 So.2d at 355-56, and cases cited therein. However, while damage to property other than the insured's work or product may not be unambiguously excluded under these provisions,[5] the evidence in this case shows there was no physical damage to the condominium units, only to Dupuy's work or product. Therefore, the "work" and "product" exceptions would eliminate the coverage that would otherwise be provided under the policy.
However, McMath makes two arguments concerning these exceptions. "Your product" is defined as "goods or products, other than real property ... sold[, or] handled" by the insured. McMath argues that because Dupuy's materials became incorporated into real property, the "product" exclusion is inapplicable. We reject this argument, because the clear import of the exception is to remove only real property itself from the definition of "your product." Had the exception meant to remove materials incorporated into real property from the definition of "your product," it would have said so. The jurisprudence has addressed many instances in which the "product" involved was incorporated into real property and has never interpreted this provision as expansively as McMath suggests; nor will this court do so. Under the plain meaning of Exclusion K, it is applicable to this case and eliminates coverage for the claimed property damage. McMath further contends Exclusion L does not apply, because of the exception stating the "work" exclusion does not apply if the work was performed by a subcontractor. Dupuy said he had subcontracted his work; McMath claims the trial court erred by making a factual finding that Dupuy had not used subcontractors, but had merely employed workers. Regardless of whether the court erred in applying Exclusion L, however, it is not necessary for every exclusion to apply in order to find the policy does not provide coverage. We have concluded Exclusion K applies to unambiguously exclude coverage for the claimed damage, which allegedly arises out of Dupuy's product. Therefore, it is not necessary to determine whether Exclusion L might also apply.[6] We conclude the district court did not err in granting summary judgment in favor of Colony, and the judgment will be affirmed.
We note, however, that the judgment is internally inconsistent as a result of the court's hand-written notations. Those include a notation that the dismissal is "w/o prejudice" and "[further], this judgment is designated as final." We interpret "w/o prejudice" as signifying "without prejudice." However, just as it is erroneous to grant a dismissal without prejudice after a trial on the merits, it is erroneous to grant a dismissal without prejudice pursuant to the granting of a motion for summary judgment. By its nature the granting of summary judgment indicates there is nothing left to determine, and the law requires judgment to be entered for one party. Jackson v. State Farm Mut. Auto. Ins. Co., 27,611 (La.App. 2nd Cir.12/6/95), 665 So.2d 661, 664. When the trial court errs in granting summary judgment without prejudice, that judgment may be amended by the appellate court to reflect dismissal with prejudice. Vega v. Wal-Mart Stores, Inc., 03-2239 (La.App. 1st Cir.9/17/04), 888 So.2d 242, 243; see also LSA-C.C.P. art. 2164.

CONCLUSION
The judgment is amended to state that the action against Colony is dismissed with *684 prejudice, and as so amended, is affirmed. All costs of this appeal are assessed against McMath.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Dupuy insisted he used backer rod and caulking around all the openings, as required by the plans and the system he was using. Although this is a factual issue that is material to the liability issue, it does not impact the insurance coverage issue that we are reviewing.
[2] The policy showed Dupuy had purchased $1 million worth of products-completed operations hazard coverage.
[3] These are the same arguments McMath made to the trial court in opposition to Colony's motion for summary judgment.
[4] This court's dicta in Superior Steel, Inc. v. Bituminous Cas. Corp., 415 So.2d 354 (La.App. 1st Cir.1982), suggesting that there may be coverage within the products-completed operations hazard provisions regardless of whether the liability arises out of an "occurrence," has been criticized. "The proposition is unsound because the undertaking of the insurer under a comprehensive general liability policy is only with respect to liability arising out of an occurrence, whether that liability falls under the premises-operations hazard, the completed operations hazard, the products hazard[,] or any other covered hazard." McKenzie & Johnson, supra § 186 at 388 n. 27.
[5] See Gaylord, 753 So.2d at 356 n. 9 and at 357.
[6] For this reason, we pretermit discussion of Exclusion N.