J^MCCLENDON, J.
By this appeal, plaintiff contests a summary judgment granted in favor two insurers, dismissing plaintiffs claims against them upon a finding of no coverage under the insurers’ commercial general liability policies for the claims made against their insured. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Our Lady of the Lake Hospital, Inc. (OLOL) operates a full service acute care hospital facility and provides related healthcare services in East Baton Rouge Parish, Louisiana, under the name of Our Lady of the Lake Regional Medical Center. Transcend Services, Inc. is a medical record management business that specializes in transforming hospital paper record systems into electronic medical record systems. This suit arises out of three contracts entered into between OLOL and Transcend. On April 11, 1997, OLOL and Transcend entered into a contract for Health Information Management Staffing and Management Services (the “HIM” contract), under which Transcend agreed to operate OLOL’s Medical Records Department and perform various tasks related to the organization, management, transcription, and maintenance of OLOL’s medical records. The second contract, entered into on September 30, 1998, was a Transcription Platform Agreement under which Transcend agreed to acquire and install certain transcription and dictation equipment that would allow OLOL to connect to Transcend’s transcription platform and access Transcend’s transcription services. The third contract, also entered into on September 30, 1998, was a marketing agreement whereby OLOL and Transcend agreed to promote utilization of Transcend’s transcription platform by other healthcare providers.
On April 5, 2001, OLOL filed suit against Transcend, alleging breach of the HIM contract and resulting damages. OLOL further alleged that, due to breach of the HIM contract, performance under the Transcription Platform Agreement and the marketing agreement was impossible. In an amended petition, OLOL named Hartford Insurance Company and Travelers Insurance Company, both of j3which issued commercial general liability insurance policies for the years 1996 through 2001 to Transcend, as additional defendants.
Hartford and Travelers filed motions for summary judgment, seeking dismissal from that lawsuit on the basis that they provided no coverage for the facts of this suit as pled by plaintiff. After hearing the matter, the trial court rendered summary judgment in favor of Hartford and Travelers, dismissing OLOL’s action against these defendants. OLOL appeals.
LAW
Summary judgment shall be rendered if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. Alford v. Kaiser, 589 So.2d 546, 548 (La.App. 1 Cir. 1991), writ denied, 594 So.2d 893 (La. *607 1992). A summary judgment may be rendered on the issue of insurance coverage alone, although there remains a genuine issue of material fact as to liability or the amount of damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476, p. 5 (La.App. 1 Cir. 7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600, 605 (La.1986). The burden of proof on a motion for summary judgment is on the mov-ant. LSA-C.C.P. art. 966(C)(2).
DISCUSSION
An exclusion concerning the insured’s failure to perform is contained in each insurer’s policy, and the provisions are identical. Each policy provides as follows:
42. Exclusions.
This insurance does not apply to:
[[Image here]]
m. Damage to Impaired Property or Property not Physically Injured
“Property damage” to “impaired property” or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in “your product” or “your work”; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to “your product” or “your work” after it has been put to its intended use.
The term “property damage” is defined in the policies to include “[l]oss of use of tangible property that is not physically injured.” The definitions sections of the policies further provide that:
“Impaired property” means tangible property, other than “your product” or “your work”, that cannot be used or is less useful because:
a. It incorporates “your product” or “your work” that is known or thought to be defective, deficient, inadequate or dangerous;, or
b. You have failed to fulfill the terms of a contract or agreement
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of “your product” or “your work”; or
b. Your fulfilling the terms of the contract or agreement.
The policies define the term “your work” to include “[w]ork or operations performed by [Transcend] or on [Transcend’s] behalf’ and materials, parts, or equipment furnished in connection with Transcend’s work or operations.
Therefore, exclusion m, section 2 unambiguously excludes coverage for “property damage” to “impaired property” or property that has not been | ¿physically injured, that arises from the insured’s failure to perform a contract. Additionally, the exclusion applies where the property damage arises from “a delay or failure by [Transcend] or anyone acting on [Transcend’s] behalf to perform a contract or agreement in accordance with its terms.”
The only facts concerning the condition of the medical records department *608 that were before the trial court on the motions for summary judgment are contained in OLOL’s petition.[1] Therein, OLOL asserts simply that the “medical records department ... was disorganized to the point of being chaotic” and “was in poor working order.” OLOL seeks to recover the expenses it incurred in restoring the function of that department. These are clearly allegations that OLOL sustained damages due to a loss of use of its medical records department. The disorganized medical records fall clearly within the definition of “impaired property” contained in the policies as they are less useful as a result of Transcend’s failure to fulfill the terms of its contract with OLOL and they can be restored by Transcend fulfilling the terms of the contract. Furthermore, there is no allegation in the pleadings filed by OLOL that the medical records have been physically damaged. Rather, OLOL simply asserts that the records are disorganized. Therefore, the medical records clearly fall within the category of “property that has not been physically injured.” The property damage incurred arose from work performed by Transcend. Thus, this damage is excluded from coverage.
Furthermore, the exclusion applies where the “property damage” results from a delay or failure by Transcend or anyone acting on behalf of Transcend to perform the terms of the contract. In its petition, OLOL states that all damages it seeks are the result of Transcend’s breach of the three contracts entered into by the parties. Therefore, plaintiffs claims are also excluded from coverage by this part of exclusion m, found in section 2.
| ¡^Finally, prior jurisprudence of this circuit dictates the result reached above. In PCS Nitrogen Fertilizer, LP v. U.S. Filter/Arrowhead, Inc., 01-2577 (La.App. 1 Cir. 11/8/02), 834 So.2d 456, this court applied an exclusion with terms essentially the same as those in the instant case, and held that, when a plaintiff has alleged only damages related to loss of use that occurred as a result of the insured’s breach of contract, coverage was excluded. In that case, PCS alleged that Arrowhead had breached a contract that required it to design, install and service a water purification system for PCS. PCS alleged that this breach caused PCS to shut down its operations. Upon learning of the shutdown, Arrowhead corrected the problem. PCS sought to recover damages for the maintenance and startup costs associated with the shut down and its loss of production. Applying a policy exclusion that is substantially similar to the one contained in the policies herein, this circuit held that coverage for damages claimed by PCS were excluded. Specifically, we stated:
[T]he undisputed facts show that only damages associated with PCS’s loss of use are claimed. And, importantly, PCS’s Petition urges only that Arrowhead failed to fulfill its contractual obligation to furnish a water supply in conformity with the contractual specifications set forth in the Water Services Agreement, specifically averring that it is the breach of contract by Arrowhead that gives rise to the claim for damages. Thus, assuming as true the allegations of its petition, the undisputed facts show that PCS suffered damages for loss of use because the water purification system failed to operate in accordance with the specifications set forth in the Water Services Agreement. With introduction of the insurance policy and the Water Services Agreement, *609 [the commercial general liability carrier] has sustained its burden of showing no genuine issue of material fact and, therefore, its entitlement to summary judgment.
PCS Nitrogen Fertilizer, LP, 01-2577 at pp. 5-6, 834 So.2d at 459.
OLOL raises numerous additional arguments in seeking reversal of the trial court’s judgment on appeal. However, considering the foregoing, we decline to discuss the additional issues raised on appeal as the exclusion m referenced herein, which is contained in each policy, unambiguously excludes OLOL’s claims for coverage. That holding is dispositive of the entire case.
|7For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against Our Lady of the Lake Hospital, Inc.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.

. In determining whether summary judgment is proper, courts consider the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file. See LSA-C.C.P. art. 966(B).