960 So.2d 134 (2007)
Arthur ANDREWS
v.
COLUMBIA CASUALTY INSURANCE COMPANY and Progressive Security Insurance Company.
No. 2006 CA 0896.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*136 Timothy K. Lamy, Barker, Boudreaux, Lamy & Foley, New Orleans, for Plaintiff-Appellant Arthur Andrews.
Richard E. King, Peter A. Bourgeois, Stephen J. Moore, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, for Defendant-Appellee Columbia Casualty Co.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Arthur Andrews appeals a judgment denying his motion for summary judgment, granting a motion for summary judgment in favor of Columbia Casualty Company (Columbia), and dismissing his claims against it on the grounds that the driver of a vehicle involved in an accident with him was excluded from coverage under the terms of the Columbia policy. Based on our de novo review of the evidence submitted by both parties in connection with the motions, we reverse the judgment, render, and remand this matter for consideration of the merits.

BACKGROUND
On November 16, 2003, Jacqueline Gaspard was driving a car owned by Southland Automotive Leasing, L.L.C. (the Leasing Company) when she lost control of the car, crossed the center line, and collided head-on with a car being driven by Andrews. Gaspard died as a result of the accident, and Andrews was seriously injured.
Gaspard was using the car as a "loaner" while her personal auto was being repaired by Southland Dodge Chrysler, Inc. (Southland). The Leasing Company provided loaner vehicles to clients of Southland, all vehicles used by Southland for that purpose were owned by the Leasing Company, and the rental fees for such vehicles were paid to the Leasing Company by Southland, not by the users of the vehicles. The Leasing Company had no employees. Southland made all the arrangements with its service clients when a loaner vehicle was needed, and its employees handled the execution of temporary substitute vehicle *137 agreements for the loaner vehicles assigned to its service clients.
The Columbia policy insured both Southland and the Leasing Company under a policy issued to Southland Automotive Group, Inc. (the Group). The declarations page of the policy showed only the Group as the named insured and "Franchised Auto Dealer" as its business description.[1] The Leasing Company and Southland were among nine additional business entities shown as named insureds on an endorsement that did not describe the nature of the business for any of those companies. The vehicle being used by Gaspard was a covered vehicle under the policy. The policy contained language stating that an insured included anyone who, with the named insured's permission, was using a covered auto that the named insured owned, hired, or borrowed, except "[y]our customers, if your business is shown in the Declarations as an `auto' dealership."[2]
Andrews filed suit against Columbia and Progressive Security Insurance Company, which insured Gaspard under a policy providing the minimum liability coverage required by Louisiana law. Andrews and Columbia filed cross motions for summary judgment on the coverage issue under Columbia's policy. After a hearing on November 19, 2004, the trial court concluded that the insurance parties had intended to identify the Leasing Company as an "auto dealership" in the Columbia policy, but that genuine issues of material fact remained concerning whether Gaspard was a "customer" of the Leasing Company. Therefore, both motions were denied, with the court instructing the parties to refile their motions after additional discovery. This was done, and after a second hearing on August 19, 2005, the court concluded that Gaspard was a "customer" of the Leasing Company and for that reason, was excluded from coverage under the Columbia policy. Andrews appeals the judgment signed September 29, 2005, which denied his motion for summary judgment, granted Columbia's motion, and dismissed all of his claims against Columbia.
Andrews contends that Gaspard was an omnibus insured under the policy and that coverage was not excluded by the referenced policy language, because the language describing who was an insured had to be considered with reference to the Leasing Company, which owned the car she was driving. Since the Leasing Company was not shown on the declarations page as an auto dealership, the exception did not apply to Gaspard. Moreover, although Gaspard was a customer of Southland, it also was not shown on the declarations page as an "auto dealership." Andrews also argues that Gaspard was not a customer of the Leasing Company, since she did not pay for the use of the vehicle and did not communicate with the Leasing Company in any way when she signed the temporary substitute vehicle agreement presented to her by Southland. Nor was Gaspard a customer of the Group, which is the only entity described *138 on the declarations page as an "auto dealership." In the alternative, Andrews contends that because the Columbia policy is capable of more than one reasonable interpretation, it is ambiguous and should be interpreted against the insurer and in favor of coverage.
Columbia argues that the language in the exclusion is clear and should be applied to all of the named insureds under the policy, including Southland and the Leasing Company, both of which were named insureds on the endorsement. Columbia reasons that the wording on the first page of the declarations describing the one named insured as a "Franchised Auto Dealer" should be applied to all the other named insureds who are listed on the endorsement, since that endorsement was intended to amend and add to the statement on the policy declaration that identifies the named insured, just as if all had been listed on the declarations page itself. Columbia claims that although the nine additional named insureds are all separate and distinct legal entities, they together make up the Group and together function as an auto dealership. Columbia maintains that the car was a covered auto under the policy, Southland hired it from the Leasing Company for use as a loaner by Southland's customers, and Gaspard was a customer of both entities. Therefore, Columbia contends the court was correct in finding that the exception was applicable in this case and coverage was precluded, citing cases in which similar exceptions have been upheld. See Savana v. Certain Interested Underwriters at Lloyd's London, 01-2450 (La.App. 1st Cir.7/2/02), 825 So.2d 1242; Gambino v. Lamulle, 97-2798 (La.App. 4th Cir.6/10/98), 715 So.2d 574; and Baker v. Kenney, 99-2950 (La.App. 4th Cir.5/3/00), 767 So.2d 711, writ denied, 00-2153 (La.10/13/00), 771 So.2d 650.

APPLICABLE LAW
Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment must prove some provision or exclusion applies to preclude coverage. Gaylord Chem. Corp. v. ProPump, Inc., *139 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352.
Insurance Policy Interpretation
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. LSA-C.C. art.2045; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763. If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046 The court should not strain to find ambiguity where none exists. Strickland v. State Farm Ins. Cos., 607 So.2d 769, 772 (La.App. 1st Cir.1992).
However, if there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. See LSA-C.C. art.2050; Louisiana Ins. Guar. Ass'n, 630 So.2d at 763. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. See LSA-C.C. art.2056; see also Louisiana Ins. Guar. Ass'n, 630 So.2d at 764. Under this rule of "strict construction," equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. For the rule of strict construction to apply, the policy must be susceptible to two or more interpretations, and the alternative interpretations must be reasonable. Bonin v. Westport Ins. Corp., 05-0886 (La.5/17/06), 930 So.2d 906, 911. The determination of whether a contract is clear or ambiguous is a question of law. McMath Const. Co., Inc. v. Dupuy, 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 681, writ denied, 04-3085 (La.2/18/05), 896 So.2d 40.

ANALYSIS
The first step in interpreting any insurance contract is to examine the policy language. If the language is clear and explicit, no further interpretation may be made in search of the parties' intent. The subject policy states that "the words `you' and `your' refer to the Named Insured shown in the Declarations." The provision at issue in this case explains who is an insured, and states that in addition to the named insureds, an insured is anyone else "while using with your permission a covered `auto' you own, hire or borrow except . . . [y]our customers, if your business is shown in the Declarations as an `auto' dealership." There is no dispute that Gaspard was using a covered auto, that it was being used with the permission of a named insured, and that it was owned by one of the named insureds, the Leasing Company, and hired by another named insured, Southland. The only issue is whether Gaspard was a customer of a named insured whose business description was shown in the declarations as an auto dealership.
On the declarations page, only one company is shown as a named insured  the Group  and the only place the description of any business as an auto dealership is *140 shown is also on that declarations page.[3] Therefore, the simplest and most straightforward interpretation is that put forward by Andrews, namely, that since neither Southland nor the Leasing Company is shown as an auto dealership on the declarations page or even on the endorsement to the declarations page, the exception does not apply to customers of either of them. This argument is supported by the answers to interrogatories and requests for admission, in which Columbia admits that Southland and the Leasing Company, along with the other named insureds on the policy, are each separate and distinct legal entities, and that the Leasing Company, not Southland, owned the vehicle that was provided to Gaspard as a loaner. The evidence also includes deposition testimony from Jeff Teuton, who described himself as the president and owner of all of these companies.[4] He confirmed that the Group, Southland, and the Leasing Company are each separate and distinct legal entities; that each is separately incorporated; each has filed separate corporate documents with the secretary of state; and each files its own tax returns. In addition, the record includes a "Vehicle Lease Agreement," on which the vehicle provided to Gaspard is listed, and in which the Leasing Company agrees to lease that vehicle and nine others to Southland for a flat monthly fee of $200 per vehicle. Furthermore, although it is possible to infer from the names of most of the entities listed as named insureds on the endorsement that they are in some way involved in automobile or trailer leasing or sales, one of those companies is "Southland International of Louisiana, Inc." and another is "Southland International Real Estate Holdings, LLC," neither of which suggests an auto dealership.
On the other hand, Columbia contends that the endorsement should be treated as an extension of the declarations page, since the only purpose of that endorsement is to show that there is more than one named insured on the policy. As an extension of the declarations page, all of the other terminology on that page  including the identification of the named insured's business as a franchised auto dealer  should be applied to all of the companies shown as named insureds. Moreover, although the named insured companies are separate legal entities, Teuton is the owner/president of all of them, and the employees of these companies are considered employees of the Group and are paid by the Group. Teuton characterized the Leasing Company as a "slave corporation to the car company," which he formed "to supplement the other corporations." The Leasing Company had no employees of its own, no stationery or business forms using its name, and was operated out of the same location as Southland. In fact, the temporary substitute vehicle agreement signed by Gaspard does not have the name of the Leasing Company or Southland on it, and states that "the owner of the vehicle, (`dealer') grants the use of a temporary substitute vehicle (`vehicle') described in this agreement to the service customer (`customer')." Dean Click, the service manager at Southland who handled the transaction with Gaspard, stated that with reference to loaner vehicles, he was unsure which company owned them and which company was meant by the term "dealer" *141 in that agreement. Teuton testified that he would assume that the term referred to Southland, even though the car was actually owned by the Leasing Company.[5] He and Click both confirmed that the transaction by which the loaner vehicle was provided to Gaspard was handled entirely by Southland.
After reviewing the arguments of both parties and the evidence submitted in connection with their cross-motions for summary judgment, we conclude that the relevant provision of the insurance contract at issue is unclear. By stating that the exclusion applied only when the named insured's business was shown in the declarations as an auto dealership, a reasonable argument can be made that since some of the named insureds were not so designated in the declarations, on the endorsement, or anywhere else in the policy, the exclusion is not applicable to those named insureds. However, it is equally reasonable to conclude that the insured parties intended to have all the provisions of the insurance contract, including this exclusion, apply to all of the named insureds, since the endorsement merely added named insureds to the contract, and the declarations page described the business of the named insured on that page as a "Franchised Auto Dealer."
We have also examined the other cases interpreting this same exception, including those cited by Columbia that enforced it and precluded coverage, and did not find any involving the precise issue which is before this court in this case. In those cases, either the vehicle owner was clearly listed on the declarations page as an auto dealership,[6] or the issue was simply not addressed.[7] Only one case involved a situation somewhat analogous to the issue in the case before us. In National Union Fire Ins. v. Harrington, 02-0832 (La.App. 3rd Cir.4/17/03), 854 So.2d 880, 888, the parties opposing the insurer's motion for summary judgment argued that because the declarations page of the commercial *142 auto coverage part of the policy showed the nature of the business as "corporation," rather than "auto dealership," the exclusion did not apply. However, the court noted that the policy provided several different types of coverage and that on the "Common Policy Declarations" page, the named insured was shown as a "franchised dealership," which, when read in conjunction with other provisions, was sufficient to identify the single named insured on the policy as an auto dealership and to apply the exclusion to its customer. In contrast, the Columbia policy has multiple named insureds, the declarations page is the only page using the phrase "auto dealers", and this is the page on which only the Group is shown as the named insured and identified as a "Franchised Auto Dealer."
Having found that the policy provision is ambiguous under the facts of this case, we look to the document as a whole to see if its other provisions can assist in interpreting the exception at issue. An initial observation concerning the policy[8] is that the first page is entitled "Garage Coverage Declarations," on which the Group is the only named insured, is identified as a "corporation," and is shown conducting garage operations at multiple locations, including several locations in Houma, two locations in Harahan, and additional locations in Thibodaux, Gray, and Baton Rouge. This page is shown as "Page 1 of 2," and the following page, which is not numbered, is the endorsement listing only the names of the other nine named insureds, including the Leasing Company and Southland, which has previously been discussed. This endorsement precedes "Page 2 of 2" of the "Garage Coverage Declarations." The next twenty-one pages constitute the "Garage Coverage Form." On the third page of that form, the liability coverage for "`Garage Operations'  Covered `Autos"' describes who is an insured, and it is at this point in the policy that the exclusion at issue in this case is stated. On the nineteenth page, "Garage operations" is defined as:
... the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also include all operations necessary or incidental to a garage business.
Following these twenty-one pages are various endorsements applicable to the "Garage Coverage Form."[9] Following all these endorsements is the "Auto Dealers General Declarations" page, which we have previously discussed as the declarations page, on which the business description of the Group is shown as "Franchised Auto Dealer." That page shows that it provides only "Commercial Garage" coverage[10] under policy number FAD250281517, *143 and that the specific limits of coverage are shown on each coverage declaration sheet.[11] Immediately following this "Auto Dealers General Declarations" page, the two-page "Garage Coverage Declarations" are repeated. Additional endorsements and other policy conditions applicable to "All Coverage Forms" follow.
Having reviewed all of these sections of the policy, there is nothing, other than the "Auto Dealers General Declarations" page, to distinguish this policy as unique to auto dealerships, as compared to other commercial garage operators, such as automobile repair businesses.[12] The endorsement to the policy showing the nine additional named insured entities is not placed immediately following the "Auto Dealers General Declarations" page. Rather, the endorsement is placed between pages one and two of the "Garage Coverage Declarations." Therefore, since the "auto dealership" designation is not on the endorsement, and those nine entities are not listed with the Group on the declarations page, one could conclude from the placement of the endorsement that the additional named insureds may not be auto dealerships, but are garage operators.
Admittedly, this conclusion would seem unlikely with reference to some of the names of the named insureds, such as "Southland Dodge Chrysler, Inc." and "Thibodaux Chrysler Center, Inc.," which one would generally assume are probably auto dealerships. On the other hand, it seems equally incongruous to believe that a company called "Southland International Real Estate Holdings, LLC" is either a garage operator or an auto dealership. Overall, we are unable to find anything in the policy as a whole to clarify the ambiguity in the provision at issue.
Nor are we helped in resolving this ambiguity by attempting to ascertain how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. The purchaser in this instance may be the Group or may be all of the named insureds. However, none of them have a real interest in limiting the liability insurance available to a person injured by one of their customers while driving a covered automobile, other than the cost of the premium for such coverage. It is the insurer who has the paramount interest in this limitation or coverage exclusion and who could have clarified it by stating that the endorsement was an extension of the declarations page and specifying which of the named insureds on that page were auto dealerships. Because the insurer is the party with the most significant interest in the exclusion and is the only party with the ability to clarify it, the insurer must bear the consequences of any ambiguous contractual provision seeking to narrow its obligation.
For these reasons, after a thorough review of the policy provision at issue and application of the general rules of construction regarding the interpretation of contracts, as applied to the unique facts of this case, we are left with two reasonable interpretations of the coverage issue. Accordingly, the ambiguous contractual provision must be construed against Columbia, which issued the policy, and in favor of coverage for Gaspard, who was insured by virtue of using a covered auto owned by a *144 named insured, the Leasing Company, with the permission of a named insured, Southland.

CONCLUSION
The judgment of September 29, 2005, which granted Columbia's motion for summary judgment, denied Andrews' motion for summary judgment, and dismissed Andrews' claims against Columbia, is hereby reversed. We hereby grant Andrews' motion for summary judgment, deny Columbia's motion for summary judgment, and remand this matter for consideration of the merits. All costs of this appeal are assessed to Columbia.
REVERSED, RENDERED, AND REMANDED.
NOTES
[1] As will be discussed later, the policy actually contained two declarations pages. One was entitled "Garage Coverage Declarations" and the other was entitled "Auto Dealers General Declarations." The page on which the Group was identified as a "Franchised Auto Dealer" was the "Auto Dealers General Declarations" page. In this opinion, unless otherwise specified, the "Auto Dealers General Declarations" page is what is meant when "the declarations page" is discussed.
[2] This exception was further qualified to apply only to customers who had other available liability insurance meeting the compulsory financial responsibility law limits of the state where the covered auto was principally garaged.
[3] Neither party contends that Gaspard was a customer of the Group. Since the nature of its business is clearly shown on the declarations page as "Franchised Auto Dealer," if she were its customer, the exclusion would obviously be applicable.
[4] Teuton clarified that he was the sole owner of Southland and the Leasing Company, but believed he had only 50% ownership of the Group.
[5] There was also a suggestion in arguments to this court that the property on which Southland was located was owned by the realty company listed on the endorsement, and thus it was a supporting entity for the "Franchised Auto Dealer" shown on the declarations page of the Columbia policy. However, there was no testimony or documentation to establish this fact. Some of these contentions imply that these companies formed a "single business enterprise," which is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources in operations to achieve a common business purpose, to such an extent that courts are free to disregard their separate corporate identities. See Commercial Union Ins. Co. v. CBC Temp. Staffing Services, Inc., 04-0854 (La.App. 1st Cir.11/3/04), 897 So.2d 647, 650-51, writs denied, 05-0221 and 05-0252 (La.4/8/05), 899 So.2d 12 and 13. However, this doctrine was not raised or addressed in the trial court, nor was the evidence sufficient to support the application of the "single business enterprise" doctrine in this case.
[6] See Baker v. Kenney, 767 So.2d at 712.
[7] In Rager v. Bourgeois, 06-0322 (La.App. 1st Cir.12/28/06), 951 So.2d 330, Marshall v. Seago, 41,138 (La.App. 2nd Cir.6/28/06), 935 So.2d 752, and Falgout v. Jester, 04-0434 (La.App. 3rd Cir.9/29/04), 883 So.2d 515, the issue was whether certain persons were included in the term "customer." In Goodwin v. Western Heritage Ins. Co., 38,836 (La.App. 2nd Cir.8/18/04), 880 So.2d 985, writ denied, 04-2320 (La.11/24/04), 888 So.2d 231, the issue was whether a person whom the dealership's customer had permitted to drive the loaner vehicle was insured under the dealership's policy. In Savana v. Certain Interested Underwriters at Lloyd's London, 825 So.2d at 1244, this court held that such a provision did not violate public policy. In Gambino v. Lamulle, 715 So.2d 574, the issue involved the limits of coverage for a dealership's repair service customer who had no available underlying liability coverage. See also Bernard v. Chrysler Ins., 98-1846 (La.App. 4th Cir.3/24/99), 734 So.2d 48.
[8] The policy number is FAD250281517. The document order of this policy is consistent throughout the record, which includes multiple certified copies of the Columbia policy.
[9] Some of these endorsements are also applicable to other coverage forms. For instance, the "Deductible Liability Coverage" endorsement and the "Auto Medical Payments Coverage" endorsement state that they are also applicable to the "Business Auto Coverage Form," the "Motor Carrier Coverage Form," and the "Truckers Coverage Form." Still others show that they are applicable only to the "Commercial General Liability Coverage Form" or other forms that apparently are not part of this policy.
[10] Other types of coverage, including "Commercial General Liability" and "Commercial Auto" are left blank, indicating that insurance is not provided for these types of policies, but only for garage operations.
[11] We note that the "Auto Dealers General Declarations" page also lists a renewal policy number of FAD226869844.
[12] The "Auto Dealers General Declarations" page does provide that "[t]he declarations and the general declarations, if applicable, together with the common policy conditions, coverage form(s) and endorsements, if any, issued to form a part thereof, complete the above numbered policy."